No. 49,775

WILLIAM B. ADDIS AND FRANK ADDIS, a Partnership, d/b/a SUNSET PRODUCTS, *Appellees,* v. BERNARDIN, INC., an Indiana corporation, *Appellant.*

(597 P.2d 250)

Opinion filed July 14, 1979.

*Rex G. Beasley,* of Fleeson, Gooing, Coulson & Kitch, of Wichita, argued the cause, and *Donald R. Newkirk,* of the same firm was with him on the brief for the appellant.

*Patrick F. Kelly,* of Wichita, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

HERD, J.: This is an action by William B. Addis and Frank Addis, a partnership, d/b/a Sunset Products to recover damages for losses sustained as a result of the use of products purchased from Bernardin, Inc. Bernardin, Inc. counterclaimed for money due on Sunset Products' open account, upon which judgment was confessed. The case was tried to the court who found for the plaintiff, Sunset Products. Defendant Bernardin, Inc. appeals.

Appellee Sunset Products, a partnership managed by William

Addis, of Wichita, Kansas, is engaged in the manufacture, bottling and sale of salad dressing to the wholesale market. The dressing is bottled in gallon plastic jars and capped with a threaded lid which is usually sealed with a small plastic liner, known in the trade as "plastisol." Appellant Bernardin, Inc., an Indiana corporation, manufactures jar lids. Sunset Products purchased its jars from Addis Plastics and its lids from Dura Container, of Chicago, Illinois. From time to time prior to August 1974, sales representatives from Bernardin contacted Sunset Products about selling it jar lids, with no luck. Finally, in August, 1974, William Addis called Bernardin's sales representative, Larry Hooper, in Dallas, Texas, concerning the purchase of jar lids from Bernardin, Inc. The two men met in Addis' office in either August or September of 1974. Addis advised Hooper his company manufactured salad dressings which contained both vinegar and salt and any lids he purchased from Bernardin must be compatible with those contents. Addis also told Hooper he had been obtaining his jar lids from Dura Container and showed him an example saying he needed a similar product with a plastisol lining and a gold lacquer interior.

Addis called Hooper again in September 1974 to place the jar lid order. Addis requested white plastisol-lined lids with a gold lacquer interior. He believed the order of jar lids with a plastisol lining would be compatible with his product. Hooper advised Addis he would not recommend the jar lids for products containing vinegar and salt. Addis insisted he wanted lids exactly like those he had purchased from Dura. In spite of Bernardin's recommendation, he ordered 350,000 lids for delivery in early 1975. Hooper did not explain that the plastisol lining was only the seal on the lid and the incompatible part of the lid was the gold lacquer interior. This fact was never explained to Addis until the lawsuit was almost over. The delivery date was changed several times and Sunset Products received its first shipment of Bernardin lids in May, 1975.

Sunset Products very quickly began to receive complaints from disgruntled customers complaining of spoiled salad dressing. The company immediately picked up the jars of salad dressing and paid for the spoilage, which amounted to $115,000.00, according to Addis. Addis notified Bernardin of the problem and returned the unused jar lids. Bernardin gave Sunset a credit

memo for their cost, which amounted to $12,877.89. At the same time, the parties discussed future business and reached an agreement whereby Bernardin would furnish new lids compatible with Sunset's products and give a discount against future purchases amounting to $7,500.00. Both Addis and Bernardin representatives referred to these future credits as damages. Addis claims this settlement represents payment for the defective jar lids and the existence of a new contract. Bernardin claims the agreement represents a complete settlement of all damages suffered by Sunset.

Bernardin began shipment of the new lids which were compatible with Sunset's product. Sunset used them, but refused to pay its account because the promised discount did not immediately materialize. On appeal, Bernardin explained this was due to bookkeeping error.

Sunset Products brought suit against Bernardin for $750,000.00, which represented damages it had sustained as a result of the use of the incompatible lids. An examination of the pretrial order reveals plaintiff alleged Bernardin had been negligent in its dealings with Sunset Products and that Bernardin had breached an implied warranty of fitness. Bernardin answered, denying negligence and breach of any warranty and alleged accord and satisfaction as a defense to the claim. Bernardin also counterclaimed for $22,965.17, the amount due for the shipments of new lids. Sunset Products later stipulated this amount was due and owing. The case was tried to the court and, after numerous stops and starts, the trial court found for Sunset Products in the amount of $95,891.08. Bernardin appeals.

Appellant Bernardin alleges the trial court erred in not finding that the evidence established accord and satisfaction as a matter of law. Accord and satisfaction is an affirmative defense and must be proven by the preponderance of the evidence. 1 Am.Jur.2d, Accord and Satisfaction § 55, p. 353, states:

"When the defendant pleads an accord and satisfaction in defense to the action against him, the burden is upon him to prove that defense in accord with the general rule of evidence which places the burden of proving the affirmative of an issue upon the party alleging the facts constituting it and relying thereon, he has the burden of proving the elements constituting an accord and satisfaction, which means that he must prove that the claim he alleged had been satisfied, was unliquidated or that there was some dispute as to such claim or the amount due, or if the claim was liquidated and undisputed, that the alleged accord was based

upon a proper and sufficient consideration, a mutual agreement, or the meeting of the minds of the parties to the accord and satisfaction as to the amount to be paid or the property to be accepted, and that this was given and accepted in full settlement of the original claim or dispute."

The evidence is highly disputed regarding the type of agreement the parties entered into. Appellant alleges Addis entered into two agreements: one to replace the original, incompatible lids, and a second to settle the entire matter for $7,500.00, to be paid as a discount on future lid orders. Appellant believes it is the second agreement for $7,500.00 that constitutes the accord and satisfaction. Appellee concedes the first agreement was to replace the used lids but contends the second agreement to credit future lid orders was only a discount arrangement to pay for those replaced lids received in the first agreement.

The record reveals undisputed evidence that Sunset Products originally purchased 350,000 lids at $58.86 per thousand thereby paying out $20,601.00 to Bernardin. After the loss occurred, Bernardin took the unused lids back, giving Sunset a credit memo for $12,877.98. Bernardin's witnesses testified they also gave Sunset a $7,500.00 discount on future purchases. The credits add up to $20,377.98. Addis claims, with some credence, the amount he received represented a settlement for this original lid purchase and for nothing else. We believe the trial court was justified in finding no accord and satisfaction. The court believed there was no meeting of the minds between the two parties.

"It is not the function of an appellate court to weigh conflicting evidence, pass on the credibility of witnesses or redetermine questions of fact and our only concern is with evidence which supports the trial court's findings, and not with evidence which might have supported contrary findings." *Care Display, Inc. v. Didde-Glaser, Inc.,* 225 Kan. 232, Syl. ¶ 4, 589 P.2d 599 (1979).

Appellant urges this court to consider alleged admissions made by Addis in his testimony regarding the second agreement. Appellant relies upon *Hiniger v. Judy,* 194 Kan. 155, Syl. ¶ 2, 398 P.2d 305 (1965), which states:

"A verdict cannot be upset if there is any evidence in the record to support it, where such issue is clearly presented without complicating factors, but such rule yields to the impact of admissions made by a party in his testimony while a witness in the case, and such admissions are binding and conclusive upon him if uncontradicted or unexplained, whether such admissions are elicited on direct examination or on cross examination of the party."

See also *Simpson v. Davis,* 219 Kan. 584, 549 P.2d 950 (1976); *Brooks v. Dietz,* 218 Kan. 698, 545 P.2d 1104 (1976).

Addis' testimony reveals he had reached an agreement with Bernardin through its agents to keep him in business by amortizing a $7,500.00 loss on the lids he had used at $7.50 per thousand discount on lid purchases for the ensuing year. He further stated the agreement was for the purpose of settling the loss on the lids and did not include damages for his loss of business. We do not interpret his testimony as an admission. Addis did not intend to make a full settlement when he accepted replacement caps and credit on future cap purchases. Accordingly, we find appellant's first issue without merit.

Appellant maintains the pleadings and evidence do not support a judgment based on a finding of a breach of warranty of merchantability, K.S.A. 84-2-314. An examination of the pretrial order reveals plaintiff contends defendant breached an "implied warranty of fitness." The order does not indicate whether the contention refers to goods which are "fit for the ordinary purposes for which such goods are used" under implied warranty of merchantability, K.S.A. 84-2-314(c), or an implied warranty of fitness for a particular purpose, K.S.A. 84-2-315. The trial court's findings of fact and conclusions of law state:

"It appears to the Court that generally there is an implied warranty in K.S.A. 84-2-314 that arises through a course of dealing and usage in this trade, and that is generally that defendant company and others similarly situated converse and work with, as a part of their procedures, a purchaser to make sure that a lid is compatible with the products that the lids would be used on, and they warrant their merchandise in that regard. That warrant was breached by the defendant company."

The proof and findings are consistent with violations of K.S.A. 84-2-315, which provides:

"Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose."

rather than K.S.A. 84-2-314 which was referred to in the trial court's findings. Appellant complains the pleadings and evidence do not support the trial court's findings. Technically, that may be true, but we have stated:

"Where the record clearly discloses that all parties to an action have submitted their entire case for decision on all issues, they are held to have consented that the

court decide such issues notwithstanding that an issue so decided may—in a strict technical sense—be deemed to be outside the literal scope of the pretrial order." *Thompson v. Aetna Life Ins. Co.,* 201 Kan. 296, Syl. ¶ 1, 440 P.2d 548 (1968).

See K.S.A. 60-215(*b*); *Fieser v. Stinnett,* 212 Kan. 26, 509 P.2d 1156 (1973); *Winsor v. Powell,* 209 Kan. 292, 497 P.2d 292 (1972).

In addition, we find the trial court's findings of fact and conclusions of law consistent with breach of the implied warranty of fitness for a particular purpose. The court's citing of K.S.A. 84-2-314 instead of K.S.A. 84-2-315 was an inadvertent error. The conclusions of law are hereby construed, pursuant to K.S.A. 60-2105, to mean K.S.A. 84-2-315.

There is sufficient competent evidence to support the trial court's finding of a breach of implied warranty of fitness for a particular purpose, K.S.A. 84-2-315. A buyer's recovery under K.S.A. 84-2-315 necessitates a showing of reliance on the seller's skill or judgment to select appropriate goods in conformity with the buyer's intended use of the goods. Here, although Addis insisted upon ordering white plastisol-lined lids with gold interiors that looked like the lids he had ordered from Dura Container, he did not realize he was ordering lids that would be incompatible with his product. He wanted lids like those he had purchased from Dura Container. When Hooper visited his office, Addis showed him the Dura lid that he had previously used. Those lids had been successfully utilized with his product and he wished to duplicate his success with Bernardin's lids. Hooper, on the other hand, knew the type of highly acidic product the lids would be used with and failed to explain the difference between the type of lid Addis ordered and the type he thought he was ordering. He allowed Addis to place an order for a lid that was not like the Dura lid and was not suitable for his product with only a recommendation against the order. It is clear the seller in this instance had superior knowledge and failed to properly caution the buyer. Addis relied on Hooper's knowledge of his product and of the type of lid he wanted, believing he was ordering the type of lid the two had previously examined. We find this issue to be without merit.

Appellant's other contentions are examined in light of our decision and are found to be without sufficient merit to warrant further discussion. The judgment of the trial court should be affirmed.

IT IS SO ORDERED.