No. 55,084

GERALD SMITH, *Appellant,* v. KENNETH F. STEWART, *Appellee.*

(667 P.2d 358)

Opinion filed July 15, 1983.

*Rod L. Richardson,* of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, argued the cause and was on the briefs for appellant.

*John P. Connor,* of Bouska, Ferree & Bunn, Chartered, of Overland Park,

argued the cause, and *G. Peter Bunn, III,* of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, J.: This is a contract action brought under the Uniform Commercial Code (K.S.A. 84-1-101 *et seq.*). Plaintiff-appellant, Gerald Smith, contends the district court erred in granting summary judgment in favor of defendant-appellee, Kenneth F. Stewart, on plaintiff's claims of breach of express and implied warranties.

In the Fall of 1980 defendant advertised for sale his 1968 42-foot Trojan yacht known as the "Janice Marie II." Plaintiff saw the advertisement and inspected the boat on the Lake of the Ozarks. Plaintiff was experienced in the operation of boats. He owned a 32-foot boat but had a space problem inasmuch as his family consisted of himself, his wife, and eight children. Plaintiff conferred with defendant about the "Janice Marie II" and operated it on the lake on a trial run. Ultimately, plaintiff decided to purchase the 42-foot boat and the parties drew up a short agreement on November 21, 1980. Plaintiff paid $52,000 for the boat. As a part of the contract, defendant expressly warranted the vessel was free from dry rot and that he would be responsible for any dry rot discovered within six months of date of delivery. Delivery occurred the last weekend in February or the first weekend in March, 1981.

Three days after delivery plaintiff notified defendant one of the boat's fuel tanks was leaking and requested the condition be remedied at defendant's expense. The parties had several contacts about the fuel tank problem but defendant denied any liability therefor. Ultimately, attorneys were retained by both parties and negotiations continued through counsel.

On August 27, 1981, while the attorneys continued to negotiate on the fuel tank problem, plaintiff removed the boat from the water and dry rot was discovered on the hull below the waterline. There is a dispute as to whether plaintiff's counsel orally advised defendant's counsel of the new problem, but it is uncontroverted plaintiff did not notify defendant personally of the dry rot. On September 22, 1981, this action was filed seeking recovery for repair of the fuel tank on theories of breach of an implied warranty of merchantability and fitness for a particular purpose and for recovery and for repair of the dry rot on the

theory of breach of an express warranty. Subsequently, the fuel tank and dry rot were repaired at plaintiff's expense.

The district court entered summary judgment on both the express warranty and implied warranty claims on the grounds:

(1)  No cause of action was stated relative to breach of implied warranty of merchantability (K.S.A. 84-2-314) as defendant was not a boat merchant within the meaning of the statute; and

(2)  Plaintiff's claim based on implied warranty of fitness for a particular purpose (K.S.A. 84-2-315) was barred for failure to give notice prior to filing suit pursuant to K.S.A. 84-2-607(3)(a); and

(3)  Plaintiff's claim predicated on breach of express warranty was barred by K.S.A. 84-2-607(3)(a) for failure to give notice of the defect prior to filing suit.

Plaintiff appeals from said summary judgment.

The first issue before us is whether the district court erred in concluding plaintiff had failed to state a cause of action for breach of implied warranty of merchantability. The applicable statute is K.S.A. 84-2-314, which provides in relevant part:

"(1) . . . a warranty that the goods shall be merchantable is implied in a contract for their sale *if the seller is a merchant with respect to goods of that kind.* . . .

"(2) Goods to be merchantable must be at least such as

. . . .

"(c) are fit for the ordinary purposes for which such goods are used . . . ." (Emphasis supplied.)

As noted in the Kansas Comment following the statute:

"The obligations of this section are imposed upon merchant-sellers, including manufacturers or growers of goods. A person making a casual sale would not be a merchant (84-2-104) and no warranty of merchantability would apply."

K.S.A. 84-2-104 defines merchant as follows:

"(1) 'Merchant' means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill."

Defendant-seller is a dentist practicing in Overland Park, Kansas. There is no allegation defendant was in the boat-selling business at the time of the sale or any other time. The transaction

herein involved the casual sale of seller's personal pleasure craft. Clearly the district court did not err in holding "the seller [defendant] does not meet the requirement of being a merchant in respect to boats."

The second issue is whether the district court erred in entering summary judgment in favor of defendant on plaintiff's claim of breach of implied warranty of fitness for a particular purpose (K.S.A. 84-2-315).

The district court held:

"A cause of action may be made out under K.S.A. .84-2-315, the implied warranty of fitness. Factual questions would be involved surrounding the reliance on the seller's skill and judgment. However, the plaintiff will still be barred from remedy because of the failure to give notice. [K.S.A. 84-2-607(3)(a).] Again the policy behind the notice requirement is to give the seller an opportunity to correct the defect. There is no difference in the application of this policy whether the warranty is implied or whether it is express. The notice is necessary before filing the action. [Citations omitted.]"

We believe the district court properly granted summary judgment on the claim of implied warranty of fitness but erroneously based the same on failure to give notice of the defect pursuant to K.S.A. 84-2-607(3)(a). The judgment of a trial court, if correct, is to be upheld, even though the court may have relied upon a wrong ground or assigned an erroneous reason for its decision. *Farmers State Bank v. Cooper*, 227 Kan. 547, Syl. ¶ 10, 608 P.2d 929 (1980). It is undisputed plaintiff first notified defendant of the fuel tank problem within a few days of delivery of the boat. Defendant has never challenged the sufficiency of this notice.

Contrary to the holding of the district court, we believe plaintiff has failed to state a cause of action based on breach of implied warranty of fitness for a particular purpose. This implied warranty is set forth in K.S.A. 84-2-315 as follows:

"Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose."

The Official UCC Comment following said statute states in pertinent part:

"2. A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used

are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question. For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains."

As was stated in *International Petroleum Services, Inc. v. S & N Well Service, Inc.*, 230 Kan. 452, 639 P.2d 29 (1982):

"The provisions of K.S.A. 84-2-315, covering the warranty of fitness for a *particular purpose*, are frequently confused with the implied warranty of merchantability which covers fitness for *ordinary purposes*. The warranty of fitness for a *particular purpose* is narrower, more specific, and more precise. See *Addis v. Bernardin, Inc.*, 226 Kan. 241, 245, 246, 597 P.2d 250 (1979); *Christopher & Son v. Kansas Paint & Color Co.*, 215 Kan. 185, 523 P.2d 709, *reh. denied* 215 Kan. 510 (1974); and *Boehm v. Fox*, 473 F.2d 445 (10th Cir. 1973).

"In our present case the buyer's intended use of this equipment in his business was no different than the use of the equipment in any oil well servicing business. No specific use by the defendant buyer was envisaged which was peculiar to the nature of his business. When goods are acquired for the *ordinary purposes* for which such goods are generally used, no implied warranty of fitness for a *particular purpose* arises. A use for ordinary purposes falls within the concept of merchantability. So under the facts of the present case no implied warranty of fitness for a particular purpose arose." 230 Kan. at 461. (Emphasis in original.)

Defendant-seller operated the boat as a personal pleasure craft on an inland lake. Plaintiff-buyer purchased the boat for like use. Such usage is well within the ordinary purpose of such goods. There is no allegation that plaintiff's intended usage of the boat was for a particular purpose as opposed to an ordinary purpose. In his motion for relief from the judgment, plaintiff concedes K.S.A. 84-2-315 "applies only when the buyer indicates to the seller that he intends to use the goods in a manner not *customarily* made for the goods." Taking plaintiff's allegations relative to the dangerous conditions resulting from the leaky fuel tank as true, the defect rendered the boat unfit for ordinary purposes as opposed to unfit for a particular purpose.

Under the uncontroverted facts herein, we conclude plaintiff has failed to state a claim of breach of implied warranty of fitness for a particular purpose pursuant to K.S.A. 84-2-315. The district court's entry of summary judgment on this claim is affirmed although based upon erroneous grounds.

The third issue is whether the district court erred in holding plaintiff's claim for breach of an express warranty was barred by virtue of plaintiff's failure to give defendant-seller notice of the breach, pursuant to K.S.A. 84-2-607(3)(*a*), prior to filing suit. Said statute provides in pertinent part:

"(3) Where a tender has been accepted

"(*a*) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy . . . ."

White & Summers, Uniform Commercial Code § 11-10 (2nd ed. 1980), has commented:

"One can identify at least three policies behind 2-607. The first and most important reason for requiring notice is to enable the seller to make adjustments or replacements or to suggest opportunities for cure to the end of minimizing the buyer's loss and reducing the seller's own liability to the buyer. For example, the purchaser of a truck should tell the seller at once of any defects and procure any necessary replacements and adjustments. He should not allow the truck to sit in his yard for a year and then sue for the profits that he would have made during that year had the truck worked properly. The second policy behind the notice requirement is to afford the seller an opportunity to arm himself for negotiation and litigation. For example, our sources tell us that the Henningsens notified Chrysler so late in their famous case that Chrysler was not even able to find and inspect the automobile in which Mrs. Henningsen was injured. [*Henningsen v. Bloomfield Motors, Inc.*, 32 N.J. 358, 161 A.2d 69 (1960).] Had Chrysler been able to find the allegedly defective car, it might have been able to present certain defenses or at least have been able to limit the jury's speculation. A final, and less important policy behind the notice requirement is to give the defendant that same kind of mind balm he gets from the statute of limitations. There is some value in allowing a seller, at some point, to close his books on goods sold in the past and to pass on to other things." pp. 421-22.

We turn to the facts herein. The boat was delivered to plaintiff either the last weekend in February or the first weekend in March 1981. The contract between the parties expressly provided:

"Upon the delivery date, Ken Stewart [seller] guarantees that the yacht is free of dry rot and for a period of six months thereafter shall remain free of dry rot. Should any dry rot appear at the time of delivery or within the six-month period, it would be the responsibility of Ken Stewart. If any dry rot appears subsequent to that period of time it is the responsibility of Gerald Smith [buyer]."

Defendant-seller concedes "the warranty period ended around the first of September, 1981." Dry rot was discovered on the hull of the ship when it was removed from the water on August 27, 1981. There is no claim by defendant that the warranty period had expired prior to discovery of the dry rot. It is disputed whether plaintiff's attorney discussed the dry rot problem with defendant's attorney prior to filing suit. Inasmuch as it is the propriety of entering summary judgment that is before

us, we shall assume no such conversation occurred. This lawsuit, seeking recovery for the defective fuel tank and the dry rot damage, was filed September 22, 1981. Defendant was personally served with summons on September 23, 1981, and had personal knowledge of the dry rot claim as of that date. Defendant contends:

"Plaintiff's failure to notify defendant immediately after the discovery of the dry rot on August 27, 1981, was extremely prejudicial to [defendant]. Even if notice had been given before filing suit, there would be substantial doubt as to whether it met the statutory requirement of reasonableness."

We do not agree. Less than a month elapsed between discovery of the dry rot and the filing of suit. Plaintiff, at his own expense, had the dry rot repaired in October, 1981, and is seeking recovery of said expense. At the time suit was filed each party had already retained counsel relative to an alleged defect in the boat. A copy of the petition was mailed to defense counsel at the time suit was filed, in addition to service of same upon defendant. There is no showing that the three-week gap between discovery of the dry rot and defendant's awareness of same increased the claim for damages, hindered discovery of evidence to be utilized in defense of the claim, or was unreasonable in any other respect. Defendant's claim that the delay was "extremely prejudicial" is a bare conclusional statement unsupported by any stated facts.

This brings us to the more troublesome aspect of this issue. Was the failure of plaintiff to give notice of the alleged breach of the express warranty prior to filing suit an absolute bar to the claim for recovery of damages therefor? K.S.A. 84-2-607(3)(a) does not expressly state the giving of the notice is a condition precedent to the filing of an action. However, several courts have so interpreted the statute.

*Dold v. Sherow*, 220 Kan. 350, 552 P.2d 945 (1976), was an action to recover damages for breach of express and implied warranties involved in a cattle sale. We said:

"It is undisputed in the instant case that plaintiff's petition failed to allege that notice was given; nor was there a general allegation in the petition of fulfillment of all conditions precedent. In fact, the record supports the conclusion that there was no evidence at trial by either plaintiff or defendant indicating whether notice was given pursuant to 84-2-607(3).

"Based on these facts the issue before us boils down to whether plaintiff is barred from any remedy by failure to plead and prove notice. The official UCC

comment to 84-2-607(3) [Comment No. 4] notes that 'the rule of requiring notification is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy.' By receiving timely notice of an alleged breach the seller is afforded an opportunity to prepare his defenses and govern his conduct accordingly. (*Davidson v. Wee*, 93 Ariz. 191, 379 P.2d 744 [1963].)

"Plaintiff purchased the cows from defendant on January 2, 1973. On January 10, 1973, three of the cows were inspected by a veterinarian and found to be older than represented and without calves. The entire herd was inspected around March 1, 1973, whereupon the extent of the breach was fully discovered by plaintiff. Suit was not brought until eight months later, on November 7, 1973.

"We have established that the statutory requirement of notice under 84-2-607(3) is in the nature of a condition precedent which must be pled and proved by the party claiming the breach of warranty. Under K.S.A. 60-209(c) it would have been sufficient for plaintiff to aver generally that all conditions precedent had been performed. (*James v. City of Wichita*, 202 Kan. 222, 447 P.2d 817 [(1968)].)" 220 Kan. at 352-53.

In *Lynx, Inc. v. Ordnance Products*, 273 Md. 1, 327 A.2d 502 (1974), Maryland's highest court noted:

"Since the existence of a right of action is conditioned upon whether notification has been given the seller by the buyer, where no notice has been given prior to the institution of the action an essential condition precedent to the right to bring the action does not exist and the buyer-plaintiff has lost the right of his 'remedy.' Thus the *institution of an action* by the buyer to recover damages *cannot by itself be regarded as a notice of the breach* contemplated under either §§ 2-607(3) or 2-608(2). *See Smith v. Butler*, [19 Md. App. 467, 311 A.2d 813 (1973)]; 2 Anderson, [Uniform Commercial Code, (2nd ed. 1971)], § 2-607:28." 273 Md. at 17. (Emphasis supplied.)

In *Armco Steel Corp. v. Isaacson Struct. Steel*, 611 P.2d 507 (Alaska 1980), Isaacson brought an action against Armco without having given Armco prelitigation notice of breach. Isaacson contended filing of suit was sufficient notice for purposes of U.C.C. 2-607(3)(*a*) (Alaska Stat. § 45.05.174(c)(1) [1962], now codified as Alaska Stat. § 45.02.607(c)(1) [1980]). The Alaska Supreme Court did not agree, stating:

"In reaching this conclusion, we reject Isaacson's contention that the complaint it filed in its third-party action against Armco satisfied the notice requirement of AS 45.05.174(c)(1). There are very few cases which deal with this issue, and while a few courts have found pleadings in a lawsuit to be adequate notice under U.C.C. § 2-607, there are also cases to the contrary. The commentators, however, *uniformly* reject the view that pleadings satisfy the notice requirement. One treatise, for example, comments as follows:

" 'The notice of the breach of warranty that is contemplated by § 2-607(3) does not contemplate the buyer delivering a summons and complaint to the seller as constituting notice. Section 2-607(3) provides no remedy for a breach of warranty

until the buyer has given notice, therefore, summons and complaint cannot constitute notice.

  .  .  .  .

"Except for one decision [*Silverstein v. R. H. Macy & Co.*, 266 App. Div. 5, 40 N.Y.S.2d 916 (1943)], which equated the bringing of an action against the seller for breach of contract with sufficient notice, the general rule was, even under the Uniform Sales Act, that notice is a condition precedent to the buyer's right of action against the seller.

  .  .  .  .

"Like the Uniform Sales Act, the Code does not permit the filing of the law suit to constitute notice. . . .

"As a commonsense rule, it must be said that it is not within the spirit of fair play and liberal interpretation to consider the commencement of an action as the giving of notice under the Code. 3 A. Squillante & J. Fonseca, Williston on Sales § 22-11, at 308-10, 312-13 (4th ed. 1974) (footnotes omitted). *See also id.* at 301-02; *id.* § 22-11, at 53 (Cum. Supp. 1978); 2 R. Anderson, Anderson on the Uniform Commercial Code § 2-607:28 (2d ed. 1971); Annot., 17 A.L.R.3d 1010, 1111 (1968).

"We believe the commentators represent the better view. We therefore affirm the superior court's ruling that Isaacson's third-party complaint did not constitute notice within the meaning of AS 45.05.174(c)(1). We agree with the trial court that to conclude that a complaint serves as notice would defeat one of the primary purposes of the notice requirement—settlement of claims and avoidance of litigation." 611 P.2d at 512-13.

Footnote fifteen of the *Armco* opinion qualifies the strict rule previously set forth, providing:

"We note that this decision is reached in a case involving merchants who are litigating a commercial claim. *See* note 12 *supra. A comparably strict application of the notice requirement of AS 45.05.174(c)(1) may not be appropriate in a case involving a consumer's claim of breach. See* note 13 *supra. See generally* Phillips, *Notice of Breach in Sales and Strict Tort Liability Law: Should There Be a Difference?*, 47 Ind. L.J. 457 (1972). An obligation of good faith is created by AS 45.05.024 & 45.05.040(a)(2), and, even in the commercial setting, if one party has demonstrated a lack of good faith, it might be appropriate to relax the notice requirement somewhat." 611 P.2d at 513, n. 15. (Emphasis supplied.)

A commonly utilized exception to the requirement of giving notice of the defect within a reasonable time is involved in situations where the defective product has caused personal injury. *Maybank v. Kresge Co.*, 302 N.C. 129, 273 S.E.2d 681 (1981), involved a situation where no notice of defect was given prior to filing suit. The North Carolina Supreme Court held:

"[T]he question is whether plaintiff has made a *prima facie* showing that the notice given here—three years after discovery of the defect by the filing of a suit for breach of warranty—constitutes notification within a reasonable time.

"Whether a *prima facie* showing that the notice was given 'within a reasonable time' has been made can be determined only by examining the particular facts

and circumstances of each case and the policies behind the notice requirement. If plaintiff's evidence shows that the policies behind the requirement have not been frustrated and, instead, have been fulfilled, the evidence is sufficient to withstand a directed verdict motion. *See* J. White & R. Summers, Uniform Commercial Code § 11-10 (2d ed. 1980).

"Perhaps the most important policy behind the notice requirement·is enabling the seller to make efforts to cure the breach by making adjustments or replacements in order to minimize the buyer's damages and the seller's liability. White & Summers, *supra.* § 11-10; *see L. A. Green Seed Co. v. Williams*, 6 U.C.C. Rep. 105, 246 Ark. 463, 438 S.W.2d 717 [(1969)]. This policy obviously has its greatest application in commercial settings where there is an opportunity to minimize losses. However, *in cases where the defective goods have caused personal injury, this policy has no application because the damage has already occurred and is irreversible.*

"Another policy behind the notice requirement is to afford the seller a reasonable opportunity to learn the facts so that he may adequately prepare for negotiation and defend himself in a suit. White & Summers, *supra.* § 11-10; *see e.g., Dold v. Sherow*, 220 Kan. 350, 552 P.2d 945 (1976); *Berry v. G.D. Searle & Co.*, 56 Ill. 2d 548, 309 N.E.2d 550 (1974). If a delay operates to deprive the seller of a reasonable opportunity to discover facts which might provide a defense or which might lessen his liability, thus defeating the policy behind the notice requirement, the notice might be said not to have been given within a reasonable time." 302 N.C. at 134. (Emphasis supplied.)

See also *Goldstein v. G. D. Searle & Co.*, 62 Ill. App. 3d 344, 378 N.E.2d 1083, *appeal denied* 71 Ill. 2d 617 (1978).

White & Summers, Uniform Commercial Code § 11-10 (2nd ed. 1980), states:

"The cases which rest mostly on the second policy, that is, the policy affording the seller a fair opportunity to arm himself to defend against a suit arising out of an injury caused by the defect, reflect much greater judicial willingness to permit the buyer to dillydally. Indeed, the draftsmen of the comments went out of their way to encourage courts not to close the door too quickly on a 'retail consumer,' and one suspects that the draftsmen (and many courts) would tolerate an even longer delay on the part of a retail consumer whose blood has been spilled. Comment 4 to 2-607 states that '[a] "reasonable time" for notification from a retail consumer is to be judged by different standards so that in his case it will be extended, for the rule of requiring notification is [not designed] to deprive a good faith consumer of his remedy.' Not only the draftsmen but also the writers and the courts seem to disfavor the lack of notice defense when invoked against an injured consumer. Indeed, one of the oft cited virtues of strict tort theory is that it does not require notice. The defendant's lawyer whose client is sued not by a merchant-buyer but by a consumer, especially by a consumer who suffered personal injury or property damage, should not rely heavily on a lack of notice defense. Here the notice policies collide with a countervailing policy that unsophisticated consumers who suffer real and perhaps grievous injury at the hands of the defendant-seller ought to have an easy road to recovery." p. 423.

We agree with the general proposition of law that the giving of notice within a reasonable time to the seller, pursuant to K.S.A. 84-2-607(3)(*a*), is a condition precedent to filing an action for recovery of damages for breach of implied or express warranties. Certainly the purpose of K.S.A. 84-2-607(3)(*a*) previously stated would be thwarted if, for example, a buyer purchased an automobile and two years later, out of the blue, filed an action for breach of warranty stating the vehicle had never operated properly. In the case before us, however, a very different situation exists. Here consumer-buyer notified seller three days after delivery he was dissatisfied with the purchase by virtue of the fuel tank problem. Congeniality turned to hostility as the parties discussed the problem without resolution. Ultimately, each side retained legal counsel and readied themselves for battle. The attorneys were still negotiating when the dry rot problem was discovered on August 27, 1981. Suit on both defects was filed three weeks later. Under the totality of the circumstances herein, none of the purposes of the notice within a reasonable time requirement of K.S.A. 84-2-607(3)(*a*) would be served by blind adherence to the generally appropriate "condition precedent" concept. As noted in the Official UCC Comment following K.S.A. 84-2-607(3)(*a*):

"4. . . . [T]he rule of requiring notification is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy."

We therefore conclude the district court erred in entering summary judgment, predicated on failure to give notice within a reasonable time, on plaintiff's claim of breach of express warranty.

The judgment is affirmed in part, reversed in part, and remanded for further proceedings relative to the claim for breach of express warranty.