No. 47,969

FARMERS INSURANCE COMPANY, INC., and KANSAS MUTUAL INSURANCE CO., *Appellants*, v. IVAN L. SMITH, d/b/a K-15 MOBILE HOMES and CHICKASHA MOBILE HOME, INC., *Appellees*.

(549 P. 2d 1026)

Opinion filed May 8, 1976.

*Otto J. Koerner* and *Randall H. Elam*, of Koerner and Elam, of Wichita, argued the cause, and were on the brief for the appellants.

*Wallace Underhill*, of Sawhill, Pope & Underhill, of Haysville, argued the cause for the appellee, Ivan L. Smith, and *Richard I. Stephenson*, of Fleeson, Gooing, Coulson & Kitch, of Wichita, argued the cause, for the appellee, Chickasha Mobile Home, Inc., and were both on the briefs for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is an action brought by two insurance companies against the manufacturer and seller of a mobile home to recover for a fire loss to the mobile home and its contents. The plaintiffs-appellants are Farmers Insurance Company, Inc. which will be referred to as Farmers and Kansas Mutual Insurance Company which will be referred to as Kansas Mutual. The appellees-defendants are Chickasha Mobile Home, Inc., the manufacturer of the mobile home, and Ivan L. Smith, who sold the mobile home at retail to the plaintiffs' insureds, Donald R. and Twila Sweaney.

The facts of the case are not greatly in dispute. For purposes of this appeal we will consider the evidence and all reasonable inferences therefrom in a manner most favorable to the plaintiffs. The facts as developed at the trial are essentially as follows: In January of 1971 Donald R. and Twila Sweaney conferred with the

defendant, Ivan L. Smith, about the purchase of a new Chickasha mobile home. Smith suggested that the Sweaneys go to the plant of the defendant, Chickasha Mobile Home, Inc., located in Chickasha, Oklahoma, where they might consult directly with the manufacturer and select a specific floor plan. The Sweaneys did just that. Chickasha constructed a mobile home in accordance with their directions. After the mobile home was completed by Chickasha, it was transported a distance of about 300 miles from the manufacturing site in Oklahoma to the Sweaney property located in a rural area between Winfield and Arkansas City, Kansas. The mobile home was delivered on January 22, 1971, and there followed a delay of approximately one week before the Sweaney family could move in. During this week employees of defendant Smith set up the mobile home for occupancy by the Sweaneys. The set-up procedure involved jacking up the home, putting wedges under it to take the weight off of the wheels, connecting a sewer line to the septic tank, connecting the water pipes, and installing a heat tape around the water pipes. A heat tape is an electrical wire tape wrapped around the water pipes to keep them from freezing. It is thermostatically controlled and operates only when the temperature is below 40°. The transportation and setting up the mobile home for occupancy by Smith was included in the purchase price.

The mobile home was positioned on the Sweaney property with the front facing north and the rear facing south. Located in the south bedroom of the mobile home on the closet wall facing north was a circuit breaker box which was the central source of electrical supply and which contained circuit breakers for all electrical systems in the mobile home. A hot water heater was located in the closet just south and behind the wall containing the circuit breaker box. Under the contract of purchase the Sweaneys had the obligation to connect the mobile home to the exterior electrical power supply. The Sweaneys employed Earl Rundle, an experienced electrician, to make this connection. The city of Winfield had previously installed an electrical power pole and a meter in the area where the mobile home was set up. Rundle installed a manual master cutoff switch on this electrical power pole and connected the outside meter with the electrical breaker box in the mobile home. To accomplish this Rundle installed service wires through an underground pipe which ran from the pole to the mobile home. The breaker box which contained 20 circuit breakers

had been installed at the factory by Chickasha. The electrical supply at the pole and at the breaker box were both grounded. Following this installation Rundle inspected and tested the electrical system. He testified at the trial that the electrical system was satisfactory to the extent that everything he tested worked at the time of installation. He did not inspect the breaker box for loose connections nor did he test the load on each of the circuit breaker circuits.

The Sweaneys moved into their mobile home on January 29, 1971. The Sweaneys noticed that there were several defects in the mobile home and complained to the defendant Ivan L. Smith. Smith did not repair the defects and Mrs. Sweaney complained to the defendant Chickasha. Her principal complaints were that the dishwasher and washing machine did not operate, the furnace cycled rapidly and caused the lights to dim, and a furnace duct needed repair. There were several other defects. Chickasha sent out one of its repairmen and he corrected a number of the defects. Several defects were left uncorrected. The furnace continued to cycle rapidly and when it did the lights in the home dimmed. Mrs. Sweaney also complained that the electrical circuit breaker box did not stay shut and pointed out exposed wires in the circuit breaker box.

On April 4, 1971, a fire occurred in the mobile home causing extensive damage to the home and its contents. Prior to the fire the Sweaneys had obtained fire insurance covering the mobile home from the plaintiff Farmers Insurance Company. Additional insurance was obtained from Kansas Mutual covering the contents of the home. Both insurance companies paid to the Sweaneys the amount of their losses as covered by the respective policies. By the terms of the insurance policies each of the insurance companies was subrogated to the rights of the Sweaneys. The plaintiffs Farmers and Kansas Mutual thereafter made demand upon the defendants to reimburse them for the loss resulting from the fire. When defendants refused to pay, the two insurance companies brought this action. The theory of the action was that the defendants, as manufacturer and seller of the mobile home, were each liable on the basis of the breach of an implied or express warranty resulting from the manufacture, sale and installation of the mobile home. The basic issue to be litigated was whether or not the defendants were responsible for the fire. At the pretrial con-

ference the issues of fact to be determined at the trial were stated to be as follows:

(1) What was the cause of the fire?

(2) Did the defendants or either of them breach an express or implied warranty as to fitness and suitability of the mobile home for occupancy by the Sweaneys?

(3) Did the mobile home have manufacturing defects in or near the circuit breaker box?

(4) Did the mobile home have installation defects? Following the pretrial conference the case proceeded to trial before a jury. Witnesses called by the plaintiffs established the chronology of events which has been set forth above.

The plaintiffs' evidence disclosed that the mobile home was seriously damaged by fire on April 4, 1971. It had been occupied by the Sweaney family for about 64 days. All members of the Sweaney family had departed from the mobile home for the weekend by 1:00 p. m. on April 3. Mrs. Sweaney locked the home as she left. The weather was cold and there was no evidence that any of the electrical appliances in the mobile home other than the furnace and hot water heater were drawing electrical current at the time of the fire. There was no evidence that any of the occupants smoked in the mobile home.

Two neighbors of the Sweaneys, Mr. and Mrs. Boyd Ring, were awakened on the night of the fire and advised by some young man that the fire was in progress. Mrs. Ring called the fire department. The testimony of the Rings established the fact that the fire was in the south ten or twelve feet of the mobile home. It was badly burned. Mrs. Ring also telephoned Mrs. Sweaney at her mother's home and advised her about the fire.

The plaintiffs called Richard Hopkins, who was employed by the fire department on the date the fire occurred. His fire truck was the first to arrive at the scene. He observed that the fire was located in about the south six or eight feet on the west side. It took about 45 minutes to put out the fire. After the fire was extinguished he observed that the direct fire damage to the mobile home was from the kitchen south. From his observations he concluded that since the mobile home was totally electric and since there was no indication of any other source of fuel other than electricity, it was probably an electrical fire. The morning after the fire he returned to the scene to examine the fuse box on the outside utility pole and found it to be in perfect shape. He did

not actually check the fuses in the fuse box. He further testified that there could have been any number of possible causes for the fire.

The plaintiffs next called Merwin Lindley, a fireman with the Winfield Fire Department on the evening of the fire. He arrived on the second truck. At this time it looked like the south one-half of the trailer was on fire from the kitchen on back south. The south end of the trailer was burned out but part of it was still standing. Lindley testified that the only source of fuel present to cause the fire was electricity, but he was not telling the jury that he knew how or when the fire started because he did not know. On cross-examination Lindley testified that the heat tape was a source of electricity and that heat tapes had been known to cause fires. He inspected the area beneath the mobile home and noticed that the fire had been particularly intense in the area of the hot water heater and from there to the kitchen. He concluded that the "hot spot" or origin of the fire was in the general area around the hot water heater.

Earl Rundle, an experienced electrician, testified in regard to the installation of outside connecting lines to provide electricity to the mobile home. The electrical circuit breaker box had a conduit running from the box outside the trailer 18 to 24 inches. There were approximately 20 breakers in the box already installed. He connected the electrical lines from the outside electrical pole to the main lugs of the breaker box panel. He recalled tightening the connections to the three wires he installed so they would not leak. Rundle further stated that in the country it is possible to have a power surge which can cause electrical problems. He described the circuit breaker box in some detail. From his inspection and testing everything indicated proper wiring in the breaker box. He made the installation in the latter part of January. If there had been any problems with the wiring in the breaker box, he would have anticipated they would ordinarily have shown up at that time. Rundle identified photographs of the circuit breaker box which were admitted into evidence. Rundle was unable to determine the cause of the fire. It could have been any number of things. In his opinion the most common cause of an electrical fire in any mobile home or residence is drop cords. He did not observe anything to indicate that a drop cord or extension cord had anything to do with the fire. The testimony of Earl Rundle did not shed much light on the question as to what caused the fire.

The plaintiffs' last witness was John B. Sevart, a licensed engineer in the state of Kansas with training in electronics and electrical engineering. He presently is at Wichita State University teaching a course in engineering conversion which deals with thermo dynamics or energy conversion by means of heat or electricity. Mr. Sevart is a senior partner in an engineering firm which has a rather extensive consulting business in the area of mobile homes and recreational vehicles. The witness had previously investigated fires for the purpose of determining their cause and has testified in court as an expert in this field on a number of occasions. He is recognized by the state of Kansas to certify the electrical systems of mobile homes. Suffice it to say, Sevart was fully qualified to testify as an expert witness and the trial court so found.

The testimony of John Sevart and the admissibility of his opinion as to the cause of the fire was the source of much controversy at the trial and is one of the major points involved on this appeal. The witness described in great detail the procedure he followed in investigating the fire and the factual information which he used as the basis for his opinion as to the cause of the fire. In preparation for his investigation Sevart prepared a checklist containing ten specific items which in his opinion must be considered in the investigation of any fire. During his investigation he determined: (1) This was an all electrical home. (2) The electric meter was on an outside pole. (3) The grounding for the electrical circuits was proper. (4) The electrical iron was not plugged in. (5) There was no trash basket. (6) The damage was too severe to determine the type of wire used in the mobile home or the possibility of sharp bends in the wiring. (7) The motors on the electrical appliances did not appear to be the cause of the fire viewed from the center of the damage. (8) There was a hot water heater but there was no indication that it had overheated. (9) The occupants did not smoke in the mobile home. (10) There was no paint or art activities in the home.

Sevart further found from his investigation that the mobile home was relatively clean, that there was no evidence of oily rags or trash. He checked the stove and oven and found that they had not been left on. He found no indication that lightning had struck the mobile home and he ruled out grass fire as a possible cause. He used a volt-ohm meter to determine that the washing machine, clothes dryer, and hot water heater were not the cause of the fire. He noted that the hot water heater still had water in

the tank. He determined that there were no electrical extension cords in use and that the electrical furnace had not arced or shorted out. There were no candles or containers which might have contained inflammables. There was no evidence of arson.

Sevart stated his opinion that in order for a fire to occur there must first be an ignition point or source. Then some combustible material must be present to fuel the fire. As an engineer he considered all of the things which in his opinion could have been the cause of the fire. He examined the circuit breaker box which was totally destroyed and coupled with the damage in that immediate area, it was his opinion, upon completion of his investigation, that the fire started in the general area of the circuit breaker box. Sevart stated that he looked for all of the possibilities that could start a fire and then by the process of elimination, he went through the complete checklist of possibilities to arrive at his opinion as to the source of ignition and the source of combustion in this fire.

At this point in the trial counsel for the defendants objected to Sevart giving his opinion as to the one source which caused the fire. The trial court thereupon excused the jury and engaged in an interrogation of Sevart in the absence of the jury. In response to the court's questions Sevart testified that in his opinion the cause of the fire was a loose connection at or near the electrical circuit breaker box. The trial court then inquired as to how Sevart came to that conclusion. The substance of Sevart's testimony was as follows: This was a nearly new electrical home which had been occupied for only a short period of time. There was nothing to indicate that the wiring into the home and the wiring remaining in the home and the construction of the home were not in compliance with the code. The purpose of the circuit breaker box is to protect against overloads and not to protect against loose circuits and, in fact, there is no standardized test to check for loose circuits. Loose circuits cause trouble by degree. If the circuit is very loose, like the wire is disconnected, there is no problem because there is no current flow. But if the circuit is merely loose because it leaves the factory this way or vibrates loose over the 300 mile trip from the factory and it happens to be a relatively high current carrying circuit then there will be heat generated at that location, and this has been a cause of fires and he has personally investigated a fire of this type. Sevart arrived at his conclusion partly because he did not find any other things wrong but also because this was an all electric home where there are high cur-

rents. If one of these connections was loose, it would generate sufficient heat to cause the fire. Based upon the knowledge he gained as a result of his investigation of the fire, reading the depositions taken, and being present at the trial, it was Sevart's opinion that a loose connection, rather than a short circuit, at or near the breaker box was the cause of the fire. Based upon his investigation he determined that the hot spot of the fire was in the area of the circuit breaker box. He was not of the opinion, however, that the breaker box itself was substandard or that any other thing was wrong with it.

There were two other factors Sevart considered relative to this fire. First, that due to the high moisture content of the green lumber in a new mobile home, there must be a lengthy exposure to high temperature in order for it to burn. Second, the circuit breaker box is in or near a hallway and fire would be more likely to occur when no one was home since there would be no movement of cool air in that area. Sevart agreed with the other witnesses that the only source of heat was electricity.

In response to a question from the court Sevart testified that he did not physically find a loose connection at or near the breaker box. He could only induce from the facts revealed by his investigation that there was a loose connection. He was unable to check any of the lines from the circuit breaker box because the circuit breaker box was completely destroyed by the fire. In answer to a question by counsel, Sevart conceded that the loose connection could have occurred *after* the mobile home had been set up by Smith. This would include the 64-day period during which the mobile home was occupied by the Sweaney family and the work was performed by Earl Rundle to bring electricity to the mobile home from the outside source of supply.

The defendants objected to the introduction of Sevart's opinion that the source of the fire was a loose connection at or near the circuit breaker box for the reason that there was not a sufficient evidentiary basis to sustain such a conclusion and the opinion was based upon an inference upon an inference. In support of his position counsel for the defendant Chickasha reasons as follows: There is no direct evidence to show where the fire started. Sevart's opinion as to the origin of the fire is an inference based upon his observation of the damage in the immediate area of the breaker box which was totally destroyed. Having inferred the origin of the fire, Sevart then draws the inference that the fire was electrical

in nature based upon the process of elimination and the fact that the mobile home was totally electric. Having inferred that the fire originated in the area of the circuit breaker box and that it was electrical in nature, Sevart further hypothecates that the cause of the fire was a loose electrical connection at or near the breaker box. Sevart's opinion as to the cause of the fire is a clear presumption predicated upon two inferences drawn from the facts. Sevart infers the location and nature of the fire and seeks to draw the further inference that it was caused by a defect in the mobile home. Such an inference is based on pure speculation and is not permissible.

The trial court sustained the defendants' objection to the admission into evidence of Sevart's opinion that the source of the fire was a loose connection at or near the circuit breaker box. The court, however, did permit Sevart to testify before the jury that in his opinion from the evidence and the result of his investigation and his expertise, the fire started in the area of the circuit breaker box and hot water heater, and since there were no other fuel sources in the area the most probable cause of the fire was electrical.

With the testimony of Sevart so restricted, the plaintiffs rested their case. Each of the defendants immediately filed a motion for a directed verdict. The trial court sustained the motions for a directed verdict for the reason that the plaintiffs had failed to establish a submissible case for a breach of warranty since the plaintiffs had failed to show that there was a defect in the mobile home which existed at the time the mobile home left the possession or control of the defendants Chickasha and Ivan Smith. The trial court thereupon entered judgment in favor of the defendants and the plaintiffs have appealed to this court.

The first point raised on this appeal is that the trial court erred in refusing to permit John Sevart, the plaintiffs' expert, to give his opinion to the jury that the source of the fire was a loose electrical connection at or near the circuit breaker box. We have concluded from the evidence presented by plaintiffs at the trial and which is set forth in detail above, that the trial court was in error in excluding from evidence Sevart's opinion as to the source of the electrical fire. It is, of course, settled law in this state that a cause of action may be proved by circumstantial evidence, and such evidence, in order to be sufficient to sustain a verdict of a jury, need not rise to that degree of certainty which will exclude any

and every other reasonable conclusion. Proximate causation in a proper case may be shown by circumstantial evidence. (*Casey v. Phillips Pipeline Co.,* 199 Kan. 538, 431 P. 2d 518.) It is quite proper to use expert testimony to prove the cause of a fire provided the opinion of the expert is based upon adequate facts and is not based upon evidence which is too uncertain or speculative. (*Virginia Surety Co. v. Schlegel,* 200 Kan. 64, 434 P. 2d 772; *American Family Mutual Ins. Co. v. Grim,* 201 Kan. 340, 440 P. 2d 621.)

It has been said that one presumption of fact cannot in law become the basis of another presumption of fact. Stated in another way liability cannot result from an inference upon an inference or from presumption upon presumption. (*Emigh v. Andrews,* 164 Kan. 732, 191 P. 2d 901; *Duncan v. Railway Co.,* 82 Kan. 230, 108 Pac. 101.) In *Virginia Surety Co. v. Schlegel,* supra, this court held that what is meant by the rule forbidding the basing of one inference upon another is that an inference cannot be based upon evidence which is too uncertain or speculative or which raises merely a conjecture or possibility. However, an inference which is drawn by one with requisite experience from adequate data is evidence of equal value with so-called testimony. The real question in any case where the issue arises must always be whether there is substantial evidence, direct or circumstantial, fairly tending to prove the fact in issue. Presumptions, as understood in the law of evidence, must have substantial probative force as distinguished from surmise. If a fact may be established by inference from the presumption of another fact, it should at least be a logical deduction and reasonably certain in the light of all other proper presumptions and of all collateral facts. The chain of presumptions ought not to be extended, however, into the region of conjecture and speculation.

The problem presented in the case before us is essentially whether or not there is adequate evidentiary data in the record to serve as the basis for an opinion by the expert witness, John Sevart, that the source of the fire in the present case was a loose electrical connection at or near the circuit breaker box in the mobile home. The question is a close one. We have concluded that there is a sufficient factual basis for Sevart's conclusion as to the source of the fire to justify its admission into evidence.

The evidentiary record discloses that the investigation by the expert witness Sevart was thorough and that the undisputed testimony from several witnesses established that the cause of the fire

was probably electrical in origin and that the fire started in the area of the circuit breaker box. We do not find the evidence in this case to be so uncertain or speculative as to justify the action of the trial court in excluding Sevart's opinion as to the source of the fire. By his elimination of other possible causes for the fire it would appear that his conclusion was reasonable that the fire was the result of some defect in the mobile home's electrical system. In *Broyles v. Order of United Commercial Travelers*, 155 Kan. 74, 122 P. 2d 763, we held that the rule that inferences based on other inferences are not sufficient to meet the burden of proof has no application to different inferences made from an admitted or proven fact or state of facts. As many inferences may be drawn from a fact, or state of facts, as it will justify, so long as each has a factual foundation. Applying these rules to the present case, in our judgment the trial court was in error in excluding the opinion testimony of John Sevart that the source of the fire in the mobile home was a loose electrical connection at or near the circuit breaker box.

We have concluded, however, that the refusal of the trial court to permit John Sevart to state his opinion to the jury does not necessitate the granting of a new trial nor does it establish that the trial court was in error in sustaining the defendants' motions for a directed verdict at the close of the plaintiffs' evidence. The basis for the plaintiffs' claim that the defendants are liable to them for the fire loss is that the defendants breached their warranty that the mobile home was reasonably fit and suitable for occupancy as a mobile home. To prove their claim it was not sufficient for the plaintiffs merely to show that a fire loss occurred because of an electrical defect in the mobile home. It was also necessary for the plaintiffs to prove that the defect in the mobile home existed *at the time it left the possession or control of the defendants, the parties sought to be held liable.* (*Jacobson v. Ford Motor Co.*, 199 Kan. 64, 427 P. 2d 621; *Evangelist v. Bellern Research Corporation*, 199 Kan. 638, 433 P. 2d 380; *Querry v. Montgomery Ward & Co., Inc.*, 217 Kan. 104, 535 P. 2d 928.) Conceding that the plaintiffs by their evidence raised a reasonable inference that the source of the fire was a loose electrical connection at or near the circuit breaker box, that alone was not sufficient to make out a submissible case against the defendants Chickasha and Smith on the theory of breach of warranty. Here the expert witness, John Sevart, specifically testified that he looked for and found no direct evidence of

loose connections at or near the breaker box. He simply inferred that somewhere in that area there was a loose electrical connection which in his opinion caused the fire. It was essentially his testimony that if one of these electrical connections became loose either at the time it was constructed at the factory or in the process of being transported the 300 miles from Chickasha, Oklahoma, to the Sweaney home near Winfield, or if it become loose after the trailer had been delivered and set up by defendant Ivan Smith, a loose electrical connection could have generated sufficient heat to ignite the fire. In our judgment this testimony is not based upon sufficient factual data to justify a reasonable inference *that a loose electrical connection which may have caused the fire existed at the time it left the possession or control of the defendants.* There is nothing in evidence to show that the loose electrical connection, whatever and wherever it might have been, did not occur during the 64 days prior to the fire the Sweaney family occupied the mobile home as their residence. The area of the mobile home where a defect could have existed was not a sealed unit inaccessible to persons using the mobile home after sale and delivery. On the contrary the electrical wiring may well have been altered after the Sweaneys assumed full control of the mobile home. Under these circumstances we have concluded that the trial court did not err in sustaining the motions for a directed verdict filed by each of the defendants at the close of the plaintiffs' evidence.

We have considered each of the remaining points raised by plaintiffs on this appeal and find them to be without merit.

For the reasons set forth above the judgment of the district court is affirmed.