Robert E. ORTH and Connie A. Orth, Plaintiffs–Appellees,

v.

EMERSON ELECTRIC COMPANY, WHITE–RODGERS DIVISION, Defendant–Appellant.

No. 91–3283.

United States Court of Appeals, Tenth Circuit.

Nov. 24, 1992.

---

George W. Flynn of Cosgrove, Flynn, Gaskins & Haskell, Minneapolis, Minn. (Jim H. Goering of Foulston & Siefkin, Wichita, Kan., with him on the briefs), for defendant-appellant.

George F. Farrell, Jr., Topeka, Kan. (James E. Benfer, III, of McCullough, Wareheim & LaBunker, Topeka, Kan., with him on the briefs), for plaintiffs-appellees.

Before ANDERSON, MCWILLIAMS, and GIBSON,* Circuit Judges.

ANDERSON, Circuit Judge.

This is a diversity products liability case arising from the explosion of a propane furnace in a mobile home owned by the plaintiffs/appellees, Robert and Connie Orth. The jury awarded the Orths $567,-493.45 against the defendant, Emerson

---

* The Honorable Floyd R. Gibson, Senior Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

Electric Company, White–Rodgers Division ("White–Rodgers"), for injuries they suffered in the explosion. White–Rodgers appeals from the district court's denial of its motion for judgment notwithstanding the verdict or for a new trial, contending that the evidence was insufficient to support a verdict that its product, a safety valve, was defective or the cause of the explosion. Specifically, it claims that the Orths' expert witness improperly drew conclusions from circumstantial evidence and based his opinion on "a series of unsupported and/or erroneous assumptions." Brief of Appellant at 39. White–Rodgers also contends that the district court committed reversible error when it instructed the jury, *sua sponte*, regarding the relevance of the Orths' settlement with another defendant, RegO Company.

We hold that the testimony of the Orths' expert witness, Dr. Frank Fowler, was properly admitted since it was based on known facts, together with his experience and knowledge of causation factors. His conclusions as to causation were rational. Therefore, the evidence was sufficient to sustain the jury's verdict. We also hold that the district court did not abuse its discretion in instructing the jury to disregard any reference to the Orths' settlement with the RegO Company. Accordingly, we AFFIRM.

## FACTS

On the night of February 15, 1987, a propane explosion and fire occurred in the mobile home of plaintiffs Robert and Connie Orth. The Orths had gone to bed at approximately 10:00 p.m. About an hour later, they were awakened by their son, who said he heard a strange noise in the utility room where the furnace was located. When Mr. Orth went into the utility room, he heard what he described at trial as a scraping noise coming from inside the furnace. When he reached up to turn off the electrical power switch, an explosion occurred, and fire engulfed both Mr. Orth and his wife, who was standing approximately four feet behind him in the kitchen adjacent to the utility room.

The furnace installed in the Orths' mobile home is what the industry calls a "sealed combustion" appliance. These appliances are well-suited to mobile homes because the combustion chamber, where the gas and air are mixed, is isolated from the residence. The system operates on familiar principles: A large squirrel-cage fan draws cool air from the residence across the heat exchanger located near the combustion chamber in the furnace, then blows the heated air through a duct system back into the home.

The Orths' furnace was equipped with a control valve manufactured by White–Rodgers. The purpose of this valve is to control the flow of propane into the combustion chamber of the furnace to fuel both the pilot light and the main burner. The furnace is designed so that the pilot light remains on at all times. The White–Rodgers control valve contains a safety shut-off device ("the safety valve") designed to prevent the flow of propane into the combustion chamber if the pilot light is not burning. When the pilot light is on, it heats an adjacent thermocouple which sends an electrical signal to the safety valve which causes it to remain open. When the safety valve is open, propane flows through the control valve into the combustion chamber where it is ignited at the main burner. If the pilot light is out, the unheated thermocouple does not signal the safety valve, and it remains closed so that propane cannot flow into the combustion chamber.

The evidence in this case indicates that, on the night of the accident, the pilot light in the Orths' furnace had gone out. At trial, the Orths' expert witness, Dr. Frank Fowler, testified that the scraping noise the Orths heard immediately prior to the explosion was the booster fan rubbing against its housing. He theorized that, as a result of contact with the housing, the fan was operating at only half its normal speed, resulting in an air/gas ratio too rich in propane to keep the pilot light ignited.

The evidence offered by Dr. Fowler further indicates that the White–Rodgers safety valve did not close when the pilot light went out. All parties agree that, upon

post-accident examination, the safety valve was found to be in an open position. Dr. Fowler testified that it was his opinion that the safety valve malfunctioned due to a manufacturing defect which introduced debris or a foreign substance into the safety valve, thereby preventing it from closing and allowing propane gas to flow into the combustion chamber when the pilot light was out. Additionally, an examination of the inspection panel in front of the furnace revealed that a portion of the sealing material around the back side of the panel was blackened with carbon or soot. According to Dr. Fowler, this discoloration indicated that the inspection panel had not properly sealed, allowing propane which had accumulated in the combustion chamber to pass through the panel and into the Orths' home.

Thus, according Dr. Fowler, the booster fan rotated too slowly to provide adequate air to keep the pilot light ignited, and when the pilot light went out, the malfunction of the safety valve permitted propane to flow into the combustion chamber and seep out of the furnace into the residence, thereby causing the explosion and fire.

At trial, White–Rodgers repeatedly objected to the testimony of Dr. Frank Fowler on the ground that his conclusions regarding the speed of the booster fan and the defect of the safety valve lacked foundation.[1] These objections were overruled. At the close of the evidence, White–Rodgers moved for a directed verdict, arguing that there was "no showing of credible evidence on which a jury could find the condition of this valve in any way caused or contributed to the accident." Appendix to Appellant's Brief, Vol. 2 at B000263. The motion was denied, and the jury returned a verdict in favor of the Orths.

In addition to its claim that there was insufficient evidence upon which to base causation in this case, White–Rodgers alleges that the district court erred in advising the jury, *sua sponte,* that RegO Company's settlement with the Orths was not relevant. Facts surrounding the court's ruling will precede our discussion of this issue, *infra,* Part B.

## DISCUSSION

### A. Sufficiency of Evidence—Expert Testimony

White–Rodgers argues that the lack of any competent evidence on the elements required for manufacturer's product liability under Kansas law mandates reversal of the district court's denial of its motion for judgment n.o.v. Although we apply the substantive law of Kansas in this diversity case, federal law governs our determination of whether the court properly denied the motion for judgment n.o.v. *Zimmerman v. First Fed. Sav. & Loan Ass'n,* 848 F.2d 1047, 1051 (10th Cir.1988). We review *de novo* the denial of a motion for judgment n.o.v., applying the same standard of review as that used by the district court. *Rajala v. Allied Corp.,* 919 F.2d 610, 615 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1685, 114 L.Ed.2d 80 (1991). That is, we are obligated to inquire " 'whether there is evidence upon which the jury could properly find a verdict for th[e] [nonmoving] party.' " *Hurd v. American Hoist & Derrick Co.,* 734 F.2d 495, 499 (10th Cir.1984) (quoting 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2524 (1971)). In order to reverse the trial court's decision to deny a motion for judgment n.o.v., we must conclude that "viewed in the light most favorable to the nonmoving party, the evidence and all reasonable inferences to be drawn therefrom point but one way, in favor of the moving party." *Mitchell v. Mobil Oil Corp.,* 896 F.2d 463,

---

1. White–Rodgers did not dispute at trial, nor does it here, Dr. Fowler's qualifications as an expert with knowledge, training and experience in the field of chemical engineering. The record shows that Dr. Fowler has had extensive experience with propane systems, and has investigated scores of incidents involving propane gas fires and explosions. Supp. Appendix to

Appellees' Brief, Vol. 1 at A–44–A–46. This is a case where a determination of the expert's qualifications by the trial judge could not be disputed. *See Wylie v. Ford Motor Co.,* 536 F.2d 306, 309 (10th Cir.1976) (*Wylie* II) (trial court committed reversible error in refusing to allow expert to testify at second trial after expert's qualifications had been established at first trial).

467 (10th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 252, 112 L.Ed.2d 210 (1990); *see also Zimmerman,* 848 F.2d at 1051.

■ Under Kansas law, a plaintiff must prove three elements to recover on a theory of manufacturer's product liability: "(1) the injury resulted from a condition of the product; (2) the condition was an unreasonably dangerous one; and (3) the condition existed at the time the product left the defendant's control." *Mays v. Ciba–Geigy Corp.,* 233 Kan. 38, 661 P.2d 348, 360 (1983). The plaintiff may prove these elements "inferentially, by either direct or circumstantial evidence." *Id.*

■ White–Rodgers claims that the sole evidence presented by the Orths was the expert testimony of Dr. Fowler who, according to White–Rodgers, based his conclusions on a "series of unsupported and/or erroneous assumptions." Brief of Appellant at 39. White–Rodgers specifically objects to Dr. Fowler's use of circumstantial evidence when direct evidence was supposedly available to support his assumptions. In particular, Dr. Fowler's theory that the safety valve malfunctioned as a result of debris located within the safety valve was not based upon direct examination of the valve's interior. No debris was located or examined. As Dr. Fowler testified at trial, "[w]e did not take [the safety valve] apart. Nobody suggested that we take it apart. It was always a possibility, but never was done." Appendix to Appellant's Brief, Vol. 2 at B000127. Failure to take the valve apart, in White–Rodgers' view, rendered Dr. Fowler's assumption that debris caused the valve to remain open mere speculation and conjecture.

The Orths assert that the valve was not taken apart because one of White–Rodgers' attorneys touched the valve, inadvertently causing it to move into a more closed position. Dr. Fowler testified that "there wasn't much point in [disassembling the safety valve] after the thing had been inadvertently moved. . . . We lost our chance to find out really what was hanging it up at that point right then." *Id.* at B000083. Dr. Fowler also testified that since the safety valve was a sealed unit when it left the manufacturer, its failure to close was the result of a manufacturing defect. *Id.* at B000084.

■ The Kansas Supreme Court in *Mays v. Ciba–Geigy* observed that "liability in a products liability case cannot be based on mere speculation, guess or conjecture." 661 P.2d at 360. However, circumstantial evidence is sufficient if it "tend[s] to negate other reasonable causes, or there [is] an expert opinion that the product was defective." *Id.* Such evidence "must justify an inference of probability as distinguished from mere possibility." *Id.* It may be based on an expert's learned analysis and assumptions derived from his experience, study and knowledge. *See Wheeler v. John Deere Co.,* 935 F.2d 1090, 1100–01 (10th Cir.1991).

It is undisputed in this case that the White–Rodgers safety valve was in an open position when examined after the accident. The fact that the valve was open when it should not have been certainly "justif[ies] an inference of probability" that the valve malfunctioned. Furthermore, Dr. Fowler's opinion that the valve's being "stuck" in an open position was due to debris introduced during manufacture cannot fairly be characterized as pure conjecture, particularly inasmuch as the device was sealed when it left the factory.

■ We are unpersuaded by White–Rodgers' contention that "when a plaintiff could prove [a] defect by direct, available evidence, and fails to do so, the plaintiff's claim must be rejected as a matter of law." Brief of Appellant at 30. Federal law controls questions concerning foundation for expert testimony. This circuit has rejected the *per se* requirement urged by White–Rodgers. In *Wylie v. Ford Motor Co.,* 502 F.2d 1292 (10th Cir.1974) (*Wylie* I), the plaintiff presented expert testimony to explain why his automobile lost control. It was the expert's opinion that the car's control arm was defective because the ball joint had abnormally worn down, permitting the ball to separate from the socket, thereby causing the accident. In reversing the district court's grant of a directed ver-

dict in favor of the defendants, this court stated:

> It is true that [the expert] did not run metal hardness tests or examine the grease to substantiate his abnormal wear theory and that he did not examine the vehicle's spindle. These matters, however, go to the weight which the trier of fact should accord the evidence and do not make the testimony incredible.

*Id.* at 1294. *See also Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 650–51 (10th Cir.1991) (reaffirming the view expressed in *Wylie* that "otherwise relevant, factually related expert opinion evidence could support a products liability claim despite the fact that the expert did not conduct independent tests").

■ Dr. Fowler's testimony, which formed the basis of the Orths' case, did rest on a series of assumptions about what happened to cause the explosion: (1) the booster fan, which was rubbing against its caging, rotated too slowly to produce enough air to keep the pilot lit; (2) the safety valve failed to close as it should have when the pilot went out; and (3) gas accumulated in the combustion chamber and seeped through the inspection panel, which was not properly sealed. But, notwithstanding its hypothetical nature, Dr. Fowler's theory had a logical and scientific basis. He was not expounding on novel scientific evidence, but was taking known facts, together with his experience and knowledge of causation factors, and drawing a rational conclusion as to causation. Absolute certainty is not required. *See Werth*, 950 F.2d at 651 (expert's theory that defect in circular saw caused accident was based on "clear probability"); *Jones v. Otis Elevator Co.*, 861 F.2d 655, 663 (11th Cir.1988) ("[A]s long as a logical basis exists for an expert's opinion ... the weaknesses in the underpinnings of the opinion[ ] go to the weight and not the admissibility of the testimony."); *Ponder v. Warren Tool Corp.*, 834 F.2d 1553, 1557 (10th Cir.1987) (expert's testimony admissible even though it expressed his opinion on the cause of tire explosion); *Mays v. Ciba-Geigy Corp.*, 661 P.2d at 360 (" 'It is, of course, settled law in this state that a

cause of action may be proved by circumstantial evidence, and such evidence ... need not rise to that degree of certainty which will exclude any and every other reasonable conclusion.' ") (quoting *Farmers Ins. Co. v. Smith*, 219 Kan. 680, 549 P.2d 1026, 1033 (1976)). *Accord Strict Products Liability—Proof of Defect*, 51 A.L.R.3d 8, 15 (1973) (an inference of defectiveness may be appropriate "where there is at least some evidence offered, or present in the circumstances surrounding the event, which tends to eliminate or make improbable some other cause"), *cited in Weir v. Federal Ins. Co.*, 811 F.2d 1387, 1392 (10th Cir.1987).

■ Finally, we note that the district court has broad discretion in determining whether or not to admit expert testimony, and we review a decision to admit or deny such testimony only for abuse of discretion. *Quinton v. Farmland Indus., Inc.*, 928 F.2d 335, 336 (10th Cir.1991); *see also Karns v. Emerson Elec. Co.*, 817 F.2d 1452, 1459 (10th Cir.1987). It is within the trial court's broad discretion to decide whether or not an expert's testimony will "assist the trier of fact to understand the evidence or determine a fact in issue." Fed.R.Evid. 702.

Our review of the record leads us to conclude that the district court did not abuse its discretion in allowing Dr. Fowler to offer his theory as to what caused the explosion. His testimony served to "connect up" the direct evidence in this case by providing a plausible explanation for the slow rotation of the booster fan, the consequent failure of the pilot to ignite, and the defect which caused the White–Rodgers valve to remain open. Because the jury did not have Dr. Fowler's knowledge of the behavior of propane gas in such a scenario, his testimony assisted them in understanding the evidence presented.

■ In sum, we find there was sufficient evidence presented at trial to sustain the jury's verdict for the Orths. Drawing all reasonable inferences in favor of the plaintiffs, the proof simply was not so one-sided as to permit but one rational conclu-

sion. The expert testimony, though based on circumstantial evidence, was sufficiently reliable. We agree with the district court that plaintiffs met their burden of proof by demonstrating that the White–Rodgers safety valve failed to operate correctly, that this failure was contrary to the manner in which the device was reasonably expected to operate, that this failure was not the result of some independent, non-defect cause, and that this failure caused the plaintiffs' injuries. Memorandum and Order, Appendix to Appellant's Brief, Vol. 1 at A000347. The district court was, therefore, correct in denying White–Rodgers' motion for judgment n.o.v.

### B. *Evidentiary Rulings—Prior Settlement*

White–Rodgers next argues that the district court committed prejudicial error in admonishing the jury to disregard all references to plaintiffs' settlement with RegO Company. We disagree.

RegO Company was not named as a defendant in the Orths' original complaint. Rather, the Orths amended their complaint to include RegO as a defendant after White–Rodgers, in answering plaintiffs' Interrogatories, identified RegO as the company at fault due to the alleged improper design and malfunction of its propane regulator. Prior to trial, the Orths settled their claims against RegO and dismissed the company from the suit. Both parties then submitted motions *in limine* to the court. The Orths sought to exclude all evidence of their settlement with RegO. The court denied the motion, stating that it would advise the jury that the Orths' dispute with RegO had been "resolved ... [and] that was the claim at one time but it's over, period." Appendix to Appellant's Brief, Vol. 2 at B000006. White–Rodgers sought to prohibit plaintiffs from presenting, during their opening statement, arguments ruling out the malfunction of the RegO regulator as a cause of the accident. The court denied White–Rodgers' motion as well: "[L]et's get going with it, hear your opening statements and it will fall into place and I will be ready with rulings as they arise." *Id.* at B000011.

At trial, White–Rodgers claimed that the explosion was due to overpressurization of propane gas resulting from the malfunction of the RegO regulator. Over White–Rodgers' objection, Dr. Fowler testified that he did not believe the RegO regulator had malfunctioned and that even if it had, White–Rodgers' control valve was defectively designed in that it was not able to withstand high pressure. Later, during cross-examination of a White–Rodgers' witness, the court ruled that the pressure resistance of the White–Rodgers control valve was irrelevant. Finally, when counsel for White–Rodgers asked both Mr. and Mrs. Orth whether they had settled their claims with RegO, the court made the following comment:

> [M]embers of the jury, there has been some mention made of this event. I introduced it at the time of the jury selection process, and I mentioned to you that as this case was originally filed, the RegO Company had been formally joined by the plaintiffs, and the matter had been resolved. In my view a jury is entitled to know that simply as a fact of the event. In the course of this case there has been some reference made to it ... [but] [t]he fact that RegO had been sued and/or resolved is irrelevant to this lawsuit, and ... you are instructed to disregard the fact that it had been resolved as if it has any bearing on the issues before you in this case[,] as it will pertain to any claims of the defendant[,] or as it might pertain to any claims of the defendant as to the fault of RegO.

*Id.* at B000171. White–Rodgers asserts that the court's instruction was prejudicial and confusing to the jury because, despite several references top the RegO settlement and the high pressure theory during trial, the trial court advised the jury that all such references were irrelevant. This, according to White–Rodgers, "created a prejudicial environment in which the jury was left wondering why White–Rodgers did not itself present evidence that high pressure was the cause of the incident[,] and in which the jury was required ... to believe that there was no evidence to suggest that

RegO was at fault." Brief of Appellant at 38.

A district court's evidentiary rulings will not be disturbed absent a clear abuse of discretion. *Wheeler v. John Deere Co.,* 935 F.2d at 1099. *See also Comcoa, Inc. v. NEC Telephones, Inc.,* 931 F.2d 655, 663 (10th Cir.1991) ("A district court possesses considerable discretion in governing the presentation of evidence, and its decisions will not be disturbed absent manifest injustice to the parties.").

In determining whether or not to admit evidence, the district court must weigh its relevance against its prejudicial effect. Fed.R.Evid. 403. With respect to evidence regarding settlements, we have stated that

> [t]he prejudicial effect of allowing a jury to hear of the circumstances surrounding the settlement of a claim was one of the concerns that motivated the drafters of the Federal Rules of Evidence to absolutely prohibit the use of evidence of a settlement to prove liability or the amount of a claim. Fed.R.Evid. 408. Although Rule 408 does not prohibit the admission of evidence of ... a settlement to prove something other than liability[,] ... many of the same concerns about prejudice and deterrence to settlements exist regardless of the purpose for which the evidence is offered.

*Wier v. Federal Ins. Co.,* 811 F.2d at 1395.

In the circumstances of this case, the district court did not abuse its discretion when it advised the jury, *sua sponte,* to disregard any references to the RegO settlement. There is no showing of prejudice to White–Rodgers, particularly inasmuch as the court advised both parties before trial that the jury was entitled to know that

plaintiffs had made a claim against RegO, "[b]ut that the matter has been resolved and it's irrelevant." [2] Appendix to Appellant's Brief, Vol. 2 at B000004. Indeed, to have allowed White–Rodgers to continue questioning the Orths about the settlement with RegO would not only have been prejudicial to the plaintiffs, but would also have confused the jury, since White–Rodgers presented no evidence in its defense to substantiate its claim that RegO was at fault. The district court's ruling merely served to rectify what it considered prejudice to the plaintiff.

For the reasons stated above, we AFFIRM the district court's denial of White–Rodgers' post-trial motions.

---

2. White–Rodgers quoted the following language to argue that the *in limine* conference "tells a different story" with regard to the court's disposition toward the relevance of the RegO settlement:

> THE COURT: It's not then for [plaintiffs] to come on and say anything but what [they] have already said in [their] pretrial order, as opposed to coming on and saying: we were just funning when we sued RegO. Really didn't mean it. They are not at fault, never made a claim.... I think [plaintiffs are] not well advised to do that.

Appendix to Appellant's Brief, Vol. 2 at B000004. However, even if the court had changed its mind, which a reading of the entire *in limine* conference transcript does not suggest, " '[a] ruling on the threshold of trial does not preclude the court changing its ruling based on other developments during trial.' " *Marino v. Otis Eng'g Corp.,* 839 F.2d 1404, 1407 (10th Cir.1988) (quoting *Thweatt v. Ontko,* 814 F.2d 1466, 1470 (10th Cir.1987)).