Forrest PATTERSON, Individually and as Administrator of the Estate of Belinda Ann Patterson, Deceased, Plaintiff,

v.

CONOPCO, INC. and Chesebrough–Pond's USA Co., Defendants.

No. 97–1120–WEB.

United States District Court, D. Kansas.

Dec. 17, 1997.

Richard D. Cordry, Francis A. Hartman, Hartman, Nugent & Zamost, Chtd., Morrestown, NJ, for Plaintiff.

Lynn W. Hursh, Douglas R. Richmond, Armstrong, Teasdale, Schlafly & Davis, Kansas City, MO, for Defendants.

### Memorandum and Order

WESLEY E. BROWN, Senior District Judge.

This diversity action arises out of the death of Belinda Ann Patterson. Ms. Patterson was found dead inside her Wichita, Kansas, apartment on January 7, 1993, apparently a victim of fire. She had suffered severe burns to the upper part of her body. Plaintiff alleges in this action that Rave Hair Spray, a product manufactured by the defendant, caused or contributed to Ms. Patterson's death. The complaint asserts claims for wrongful death, negligence, product liability, and breach of warranty. The matter is now before the court on defendant Conopco's motion for summary judgment. The court finds that oral argument would not assist in deciding the issues presented.

*Summary Judgment.*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of showing that there is an absence of any issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party meets this burden, the non-moving party then has the burden to come forward with specific facts showing that there is a genuine issue for trial as to elements essential to the non-moving party's case. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To sustain this burden, the non-moving party cannot rest on the mere allegations in the pleadings. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324. In applying these rules, the court views the evidence and draws all reasonable inferences in the light most favorable to the non-moving party. *Thomas v. International Business Machines,* 48 F.3d 478, 484 (10th Cir.1995).

*Facts.*

According to the report of R.E. Mauck, the Chief Fire Investigator who was called to the scene and investigated the incident, Ms. Patterson's body was found in a hallway outside the bathroom of the apartment. Pl. Mem. Exh. 1. Her body was clad in blue jeans and the remains of a purple shirt. The shirt was mostly burned away and there was severe burning to Ms. Patterson's hair. The bathroom door had been forced from its jam and pieces of a broken door stop were laying on the floor. In the bathroom, the fire was confined to the rugs on the floor and a plastic shower curtain. A hair dryer was on top of the stool tank. A candle had been sitting next to the hair dryer but had fallen over on the hair dryer. The hair dryer had heavy exterior burn where the candle had laid on it and wax had run down on the floor. There was an open pack of cigarettes laying on top of a clothes hamper along the wall. One lone cigarette was laying on the floor in front of the stool. Examination of the bathroom and burned material showed no source of ignition except the candle. No match remains or lighter was found in the bathroom. A can of Rave Hair Spray was sitting on the bathroom sink. The label on the can stated that the contents were flammable. In the trash can was a pile of hair, and a hair brush was laying on the stool tank. None of these items had any fire damage.

Based on his investigation, Mauck stated in his report:

It is this investigator's opinion that the victim was in the bathroom fixing her hair. This was evidenced by the remains of hair in the trash can, the hair brush, and the can of "Rave" on the sink. It is further my opinion that she sprayed her hair, removed the one lone cigarette from the pack and was attempting to light it on the candle. At this time, her hair caught fire which then ignited her clothing. In her confusion, she tried to exit the bathroom. ... She did this by forcing the door from the jam and knocking the door stop off. ... Once the victim reached the hallway, she was overcome by fire and fell in the position we found her in.

*Id.* at 3. The report also stated:

On January 11, 1993, a test was conducted on the material from the victim's shirt. A piece of the shirt was exposed to an open flame. The shirt fabric caught fire and burned freely. This shirt appeared to be a cotton and polyester blend as there was melting involved. A second piece of shirt fabric was sprayed with the "Rave" hair spray and allowed to dry for a couple of minutes. When it was exposed to open flame, it immediately ignited and burned intensely.

*Id.*

The coroner determined after an autopsy that the cause of death was "smoke and thermal involvement." Def. Mot. Exh. A. Included in the coroner's report was a notation that Ms. Patterson's hair "was singed with a clusty [sic] residue." *Id.*

In addition to the foregoing evidence, plaintiff intends to offer the testimony of a PhD. Chemist, Andrew T. Armstrong. Armstrong has previously testified as an expert in arson cases and has rendered opinions on gas chromatography, the chemical composition of materials, diffusion characteristics of gases, potential ignition sources, and fire spread, duration and heat generation. Pl.

Mem. Exh. 6 at 16–17. Armstrong concluded in his report:

> Based on the information available as well my training and experience, it is my opinion the Rave Hair Spray did contribute to the injuries and ultimate death of Belinda Ann Patterson. The hair spray product contains flammable gases, flammable liquids and combustible solids which are easily ignited and will propagate a fire.

Pl. Mem. Exh. 4.

*Discussion.*

Defendant's motion for summary judgment asserts that Conopco is entitled to judgment as a matter of law because plaintiff has no competent expert testimony showing that Rave Hair Spray caused or contributed to Belinda Patterson's injuries and death. Although Conopco apparently concedes that the evidence described above would, if admissible, be sufficient to create a jury question, it argues that Dr. Armstrong's opinion should be excluded because it is based on speculation. As for R.E. Mauck, Conopco contends that plaintiff failed to properly designate him as an expert and therefore cannot introduce his opinions into evidence.

█ The court will first address the question of Mr. Mauck's designation and his opinion about the origin and cause of the fire that killed Ms. Patterson. Contrary to Conopco's assertion, Mr. Mauck was designated as an expert witness by plaintiff, although the designation was accompanied by this qualification: "Mr. Mauck is listed as an expert only in the sense that he will offer testimony concerning his investigation of the fire at decedent's home on January 7, 1993, and his subsequent investigation concerning the cause of decedent's death." Def. Reply, Exh. 2. Although the scope of this limitation is somewhat unclear, the court is not persuaded that the opinions in Mauck's supplemental report fall outside of it. Those opinions clearly pertain to Mauck's "investigation of the cause of decedent's death." Conopco has not·shown that Mauck's report or his testimony concerning the matters expressed therein are inadmissible.

█ As for Dr. Armstrong, Conopco contends that his opinion that Rave Hair Spray contributed to Patterson's death "rests completely on his belief that human hair is not flammable." Def. Reply at 7. Such a belief is speculation, Conopco asserts, because Armstrong conducted no tests regarding the flammability of human hair and based his opinion solely on his own anecdotal experience. As such, Conopco contends that Armstrong's opinion is inadmissible under Rule 702.

Federal Rule of Evidence 702 governs the admissibility of scientific expert testimony. The rule requires a determination that the testimony (1) is based on scientific knowledge, and (2) will assist the trier of fact to understand the evidence or to determine a fact in issue. Fed.R.Evid. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Supreme Court set forth the framework for analyzing the admissibility of such evidence. In essence, *Daubert* requires a determination of whether an expert's proffered testimony pertaining to scientific knowledge is reliable.[1] This requires a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether it can be properly applied to the facts in issue. The second Rule 702 requirement, that the evidence be helpful to the fact finder, is primarily a question of relevance.

Conopco has not shown that Dr. Armstrong's opinion testimony fails the above standards. Dr. Armstrong's deposition, when viewed in the light most favorable to plaintiff, indicates that his opinion is based on the totality of the circumstances and that he is drawing rational inferences from circumstantial evidence. Armstrong opined that resins in Rave Hair Spray used by Ms. Patterson likely contributed to the fire that

---

1. Under *Daubert,* courts measure reliability of scientific evidence by considering (1) whether the technique can and has been tested; (2) whether the technique has been subjected to peer review; (3) the known or potential error rate of the technique; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has gained general acceptance in the scientific community. *Id.* at 593–95. This list is nonexhaustive and the inquiry under Rule 702 is "flexible." *Id.* at 594.

took her life. Pl. Mem. Exh. 6 at 55–56. He indicated that resin in her hair caused it to ignite when it otherwise would not have. *Id.* at 56. It is true, as Conopco asserts, that Armstrong's conclusion was based in part on his stated opinion that human hair by itself (i.e. without an outside fuel source) will not sustain combustion and that this view in turn was founded in large part on Armstrong's personal experience. That fact alone, however, does not make it an illegitimate basis for consideration. Moreover, the testimony as a whole indicates that Armstrong's opinion was also based in part on his knowledge of the flammability of protein-based material. *Id.* at 18. Although Armstrong may not have conducted tests on human hair that would be relevant to his opinion, that alleged failure alone does not preclude the admission of his opinion. *See Werth v. Makita Elec. Works, Ltd.,* 950 F.2d 643, 650–51 (10th Cir.1991) ("otherwise relevant, factually related expert opinion could support a products liability claim despite the fact that the expert did not conduct independent tests."). Conopco's argument may affect the weight the jury chooses to give Dr. Armstrong's opinion, but it does not bar admission of the opinion.

 "An expert, relying upon his experience and knowledge of causation factors, may express an opinion which draws a rational conclusion as to causation." *Stover v. Eagle Products, Inc.,* 896 F.Supp. 1085, 1090 (D.Kan.1995) (citing *Orth v. Emerson Elec. Co.,* 980 F.2d 632, 637 (10th Cir.1992)). "Absolute certainty is not required." *Id.* On the record before the court, there appears to be a rational and logical basis supporting Dr. Armstrong's opinion as to causation; the court cannot conclude that the opinion is based on mere speculation. *Cf. Farmers Ins. Co., Inc. v. Smith,* 219 Kan. 680, 549 P.2d 1026, 1033 (1976) (it is proper to use expert testimony to prove the cause of a fire provided the expert's opinion is based upon adequate facts). *See also Orth,* 980 F.2d at 637 (expert "was not expounding on novel scientific evidence, but was taking known facts, together with his experience and knowledge of causation factors, and drawing a rational conclusion as to causation.") The court finds from the materials presented that Armstrong's opinion is based on scientific knowl-edge and that it will assist the jury in determining a fact in issue.

With respect to the proximate cause of an injury, it is settled law in Kansas "that a cause of action may be proved by circumstantial evidence, and such evidence, in order to be sufficient to sustain a verdict of a jury, need not rise to that degree of certainty which will exclude any and every other reasonable conclusion." *Farmers Ins. Co.,* 549 P.2d at 1033. Given the circumstances surrounding the fire as well as the opinions of Mr. Mauck and Dr. Armstrong, the court concludes that summary judgment is inappropriate because a genuine issue of fact exists concerning causation.

*Conclusion.*

Defendant Conopco's Motion for Summary Judgment (Doc. 20) is DENIED.

